# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **MIGUEL GUTIERREZ GONZALEZ**, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | EP-23-CV-00248-DCG-MAT |
| | § | |
| **MARTIN O'MALLEY,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION**[1] | § | |
| | § | |
| *Defendant*. | | |

## REPORT AND RECOMMENDATION

Plaintiff Miguel Gutierrez Gonzalez ("Plaintiff") appeals from a decision of the Commissioner of the Social Security Administration ("Commissioner") finding Plaintiff was ineligible for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3), during the period of January 1, 2017 to February 1, 2019. On April 11, 2024, Senior United States District Judge David C. Guaderrama referred this case to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636 and Appendix C to the Local Rules of the United States District Court for the Western District of Texas. For the following reasons, the Court recommends the Commissioner's decision be **VACATED** and this case be **REMANDED** for further proceedings consistent with this opinion.

## I.   BACKGROUND & PROCEDURAL HISTORY

Plaintiff received SSI benefits including Medicaid health insurance coverage for a "substantial number of years" including between 2017 and 2019. Pl.'s Br. 3, ECF No. 13. Upon his mother's death on or about December 5, 2011, Plaintiff inherited from her the home he had

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit.

resided in since 1991. *Id*. at 5–6. Plaintiff, "a person with intellectual disability," co-owns the home with his half-brother and half-sister. *Id*. at 6–7. Each sibling has an undivided, one-third interest in the property. *Id*. at 7. This single property, under one title, is comprised of two separate residences and addresses—5004 and 5006 Quitman, El Paso 79903. Tr. of Admin. R. at 39–40 [hereinafter, "Tr."], ECF No. 9. Plaintiff resides by himself in one of the duplexes, 5004 Quitman. Tr. at 50. The remaining duplex, 5006 Quitman, is a rental property occupied by a tenant. Tr. at 50. According to the El Paso Central Appraisal District ("CAD"), which is publicly available, the total value of the property, which includes both residences, is approximately $70,000. Tr. at 46–48.

On February 22, 2019, the Social Security Administration ("SSA") notified Plaintiff that his monthly SSI benefits were being lowered beginning March 2019 from $566 to $0. Tr. at 55–56. Moreover, Plaintiff was notified that his benefits were retroactively lowered to zero dollars for the period from January 2017 to February 2019 because his interest in the property constituted "countable resources worth more than $2,000." *Id*. Thus, SSA claimed overpayment of $14,598. *Id*. at 71.

On May 9, 2019, Plaintiff subsequently asked the SSA for reconsideration on the matter because he lives on "one side of the duplex known as 5004 Quitman" and "rent[s] out the other side of the duplex known as 5006 Quitman." *Id*. at 77. For years, Plaintiff alleges he "reported to the [SSA] the net monthly rental income that [he received] from the part of the building which [he] rent[ed] out," and his benefits were reduced as a result. *Id*. Plaintiff, further, claims that "the property has not been subdivided into two separate lots" and he "cannot sell just the part of the duplex building and lot which [he] rents out." *Id*. at 78. Plaintiff alleges he cannot sell the entire property, "which includes his [h]ome … and also cannot [sell] without joinder of [co-

owners]." *Id*. at 259.  In support of his position, Plaintiff's counsel testified that Plaintiff has attempted to subdivide the property and filed suit in El Paso County court against the co-owners, his half-siblings, of the property to attempt to subdivide the property but the co-owners have been uncooperative and nonresponsive.  *Id*. at 48–49.  Thus, Plaintiff alleges he cannot liquidate the property.  *Id*. at 49.

On May 19, 2019, Plaintiff's claims were denied upon reconsideration.  Tr. at 22.  Administrative Law Judge ("ALJ") Gordan Momcilovic held a hearing by telephone on April 20, 2021, and later issued a decision denying Plaintiff's claims on May 27, 2021.  Tr. at 22–25.  Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council on April 24, 2023.  Tr. at 1–3.  The ALJ's decision became the final decision of the Commissioner at that time.  Plaintiff now seeks judicial review of the decision.

## II.  DISCUSSION

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards.  *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015).  In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *id*., but it may not "try the issues de novo" or "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute

its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508.

Generally, "[w]here . . . the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). However, even if the ALJ commits legal error, "remand is warranted only if the . . . error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (unpublished) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).

**B.  Applicable Statutory and Regulatory Framework**

The Commissioner's SSI program, 42 U.S.C. § 1381 et seq., provides non-medical cash assistance to aged, blind or disabled persons. Under the statute, an aged, blind or disabled person is eligible for SSI if either his or her monthly income or overall available resources do not exceed certain maximum amounts set forth in the statute and regulations. *See* 42 U.S.C. § 1382; 20 C.F.R. § 416 subparts D and K (stating the criteria for income benefits); 20 C.F.R § 416.1205 (providing resource limits). The prescribed statutory resource limit as of January 1, 1989 is $2,000 for individuals. *See* 42 U.S.C. § 1382(a)(1)(B)(ii); 20 C.F.R. § 416.1205. The statute does not define the terms "income" or "resource." Instead, the definition of these terms is provided in the regulations promulgated under the statute. The regulation, 42 C.F.R. § 410.1201, discusses resources generally and provides:

> (a) Resources; *defined*. For purposes of this subpart L, resources means cash or other liquid assets or any real or personal property that an individual ... owns and *could convert to cash to be used for his or her support and maintenance*.

> (1) If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. *If a property right cannot be liquidated, the property will not be considered a resource of the individual ....*

42 C.F.R. § 416.1201(a)(1) (emphasis added).  Resources are separated into liquid and nonliquid categories.  The regulations explain:

> (b) Liquid Resources. Liquid resources are cash or other property which can be converted to cash within 20 days.... Examples of resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposit) and similar items. Liquid resources, other than cash, are evaluated according to the individual's equity in the resources ….
>
> (c) Nonliquid Resources. (1) Nonliquid resources are property which is not cash and cannot be converted to cash within 20 days…. Examples of resources that are ordinarily nonliquid are loan agreements, household goods, automobiles, trucks, tractors, boats, machinery, livestock, building and land. Nonliquid resources are evaluated according to their equity value except as otherwise provided….
>
> (2) For purposes of this Subpart ... the '*equity value*' of an item is defined as:
>
> (i) The price that item can reasonably be expected to sell for on the open market in the particular geographic area involved; minus
>
> (ii) Any encumbrances.

42 C.F.R. § 410.1201(b) and (c).

## C. Analysis

Plaintiff raises one general issue for the Court.  Pl.'s Br. at 1–2.  Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred when determining that "Plaintiff's [one-third] interest in real property located at 5004-5006 Quitman, El Paso, Texas was a countable resource."  *Id*.  The Commissioner responds that substantial evidence of record supports the ALJ's determination because "Plaintiff has a property interest which he can *theoretically* convert to cash to be used for his support and maintenance … [that]

far exceeds the statutory resource limit." Mem. in Supp. of Comm'r's Decision 7–9 [hereinafter, "Comm'r's Br."], ECF No. 15 (emphasis added).

The ALJ's reasoning fails to consider the entirety of the definition of "resources" found in the regulations, specifically 20 C.F.R. § 416.1201(a). According to this provision, the term "resources" means "cash or other liquid assets or any real or personal property that an individual … owns and *could convert to cash to be used for his or her support and maintenance*." 20 C.F.R. § 416.1201(a) (emphasis added). Further, Section 416.1201(a)(1) provides that, "[i]f a property right cannot be liquidated, the property will not be considered a resource of the individual." *Id*. Under the statute and regulations, the ALJ must determine whether the property at issue is available to the claimant to convert to cash for the use of his support. *See Miranda v. Barnhart*, No. SA-00-CA-1195, 2002 WL 1492202 at *4 (W.D. Tex. March 29, 2002) (finding Commissioner's decision did not apply the correct legal standard where the ALJ failed to consider "whether plaintiff's half-property interest met the regulatory definition of 'resource,' and particularly, whether said asset was available to her to convert to cash"). "The underlying purpose of the statutes and regulations is to ensure that the claimant's personal assets and funds that are readily available to the claimant are used for his or her support before the state intervenes to provide financial support for the claimant." *Serrell v. Barnhart*, No. CIV.A. SA-05-CA-0478, 2006 WL 1851716, at *6 (W.D. Tex. June 30, 2006); *Miranda*, 2002 WL 1492202, at *4. To achieve this purpose, "the ALJ must determine the amount of cash that the sale of the asset will yield to provide support for the claimant. Only then can a value be assigned to the resource for the purpose of determining the total amount of the claimant's resources." *Serrell*, 2006 WL 1851716, at *6.

In this case, the ALJ only made the following factual finding:

> The [SSA] has valued the claimant's duplex at over $70,000. The claimant has an undivided one-third interest in the property. The [SSA] assessed the claimant's interest in the half of the duplex where he does not reside at $11,837. This amount is approximately one-half of his one-third interest in the whole. Therefore, the claimant's one-third interest in the half of the duplex in which he resides is also $11,837, which has not been assessed against him.

Tr. at 25. Significantly, the finding acknowledged that claimant "is unable to separate the duplex into two separate properties" and his "home is half of the duplex he occupies." *Id*. at 24–25.

However, the ALJ did not acknowledge whether the property can even be sold as Plaintiff only has a one-third interest in the property. Even if the ALJ had considered the viability of Plaintiff selling his property interest, he would have had to determine whether the half-siblings would be "amicable to a sale of the property or whether a partition action would be necessary." *Serrell*, 2006 WL 1851716, at *6. "The ALJ would also have to consider the cost incurred in selling the property including commissions, taxes, and other expenses … to determine the amount of cash that would be available for plaintiff's maintenance and support." *Id*. As the undisputed testimony of Plaintiff's counsel reflects, Plaintiff has attempted to "reach an agreement with the other two owners" that would result in the half-siblings signing a deed transferring the side where Plaintiff resides to Plaintiff. Tr. at 48. Plaintiff has received no response from the half-siblings, which prompted his filing suit against the half-siblings. *Id*. at 49. Currently, the litigation is in Probate Court Number Two of El Paso County, Texas and it "is still pending." Pl.'s Br. at 8.

The SSA's Program Operations Manual System ("POMS") [2] provides crucial, detailed guidance for assessing countable resource controversies. The Court notes that pursuant to the

---

[2] "POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *8 n.9 (W.D. La. Aug. 10, 2015). "Generally, a court defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law." *Taylor v. Saul*, No. 4:18-CV-00765-O-BP, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019)

terms of POMS SI 01120.010, real property is considered an accessible countable resource when three criteria are met. First, the guidelines provide that the individual "must have some form of ownership interest in [the] property." POMS SI 01120.010.B.1 (citing POMS SI 01110.100). Second, the individual "must have a legal right to access [the] property" and "the legal ability to access funds for spending *or to convert noncash property into cash*." POMS SI 01120.010.B.2 (citing POMS SI 01110.100) (emphasis added). Significantly, as it relates to the facts in the instant case, the property is not a resource, however, "[w]hen there is a legal bar to sale of property (e.g., if a co-owner legally blocks sale of jointly-owned property)" *such that litigation would be required* "to accomplish sale or access." POMS SI 01120.010.C.2. Third, the individual must have the legal ability to use the property for his personal support and maintenance, such that even if the individual meets the first two requirements, "a legal restriction against the property's use for the owner's own support and maintenance means the property is not his/her resource." POMS SI 01120.010.B.3 (citing POMS SI 0111.100). Real property is excluded from the resource limit if it cannot be liquidated. 20 C.F.R § 416.1201(a)(1); POMS SI 01110.115.

The record below is not sufficiently developed with respect to the convertibility of the asset at issue. The hearing transcript and ALJ decision reflect an emphasis on the value of the asset, which indisputably exceeds the $2,000 threshold. However, POMS recognizes that a non-liquid asset mired in legal complications related to multiple owners certainly has the real potential of rendering it functionally unavailable to the part owner. It is unlikely that a partial owner of a real property asset enmeshed in a complicated, multi owner scenario would be able to sell or otherwise encumber the property using only his partial interest. The record as it stands is

inadequate insofar as the required inquiry into the question of divisibility and conversion, as pointed to by the POMS guidelines, which appears squarely on point in this matter.

Based on the foregoing, the Court finds that the Commissioner's decision did not apply the correct legal standard found in the statute and regulations. That is, the ALJ failed to consider whether Plaintiff's one-third interest met the regulatory definition of "resource," and particularly, whether said asset was available to him to convert to cash to be used for his support and maintenance. Whether Plaintiff's property interest is an accessible resource is critical to the ultimate eligibility finding and thus is not a harmless error.

### III. CONCLUSION

For these reasons, the Court recommends the decision of the Commissioner that Plaintiff was ineligible for SSI benefits from January 1, 2017 to February 1, 2019 be **VACATED** and this case be **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to 42 U.S.C. § 405(g).

**SIGNED** and **ENTERED** this   15th   day of August, 2024.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN**

**ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**